UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RACHEL L.,

                 Plaintiff,

     v.

FRANK BISIGNANO,[1] Commissioner of
  Social Security,

                 Defendant.
_____

**DECISION
and
ORDER**

**22-CV-729-LGF**
(**consent**)

APPEARANCES:          HILLER COMERFORD INJURY & DISABILITY LAW PLLC
                              Attorneys for Plaintiff
                              IDA M. COMERFORD,
                              JUSTIN DAVID JONES, and
                              KENNETH R. HILLER, of Counsel
                              6000 North Bailey Avenue
                              Suite 1A
                              Amherst, New York  14226

                              MICHAEL DiGIACOMO
                              UNITED STATES ATTORNEY
                              Attorney for Defendant
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York  14202
                                   and
                              ANDREEA LAURA LECHLEITNER
                              Special Assistant United States Attorney, of Counsel
                              Social Security Administration
                              Office of General Counsel
                              6401 Security Boulevard
                              Baltimore, Maryland  21235

---

[1] Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On May 19, 2025, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order.  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on February 13, 2023 (Dkt. 8), and by Defendant on April 10, 2023 (Dkt. 10).

**BACKGROUND**

Plaintiff Rachel L. ("Plaintiff"), brings this action under Titles II and Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application ("application") filed with the Social Security Administration ("SSA") on January 30, 2020, for Supplemental Security Income under Title XVI of the Act ("SSI" or "disability benefits").  AR[2] at 240-53.  Plaintiff alleges she became disabled on September 5, 2015, based on trouble lifting and standing for long periods of time, fibromyalgia,[3] cervical problems, essential tremors, headaches, dizziness, anxiety, depression, and a mood disorder.  AR at 18, 240, 260.  Plaintiff's application initially was denied on July 13, 2020, AR at 91, 93-105, and upon reconsideration on December 15, 2020.  AR at 92, 106-24.

---

[2] References to "AR" are to the Bates-stamped pages of the Administrative Record electronically filed by Defendant on December 21, 2022 (Dkt. 6).

[3] "Fibromyalgia is a long-term condition that involves widespread body pain.  The pain happens along with fatigue.  It also can involve issues with sleep, memory and mood."  *See* Fibromyalgia, available at: https://www.mayoclinic.org/diseases-conditions/fibromyalgia/symptoms-causes/syc-20354780, *last visited* Sept. 8, 2025.

Plaintiff timely filed a request for an administrative hearing, AR at 154-56, which was held on September 2, 2021 ("the hearing"), via teleconference before Administrative Law Judge ("ALJ") Brian W. Lemoine ("the ALJ"), located in White Plains, New York.  AR at 35-64.  Appearing and testifying at the hearing were Plaintiff, represented by Frederick Peterson, Esq., and impartial vocational expert ("VE") Cheri Plante.

On November 19, 2021, the ALJ issued a decision denying Plaintiff's claims, AR at 15-34 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 234-36.  On July 25, 2022, the Appeals Council denied Plaintiff's request to review the ALJ's decision, rendering it the Commissioner's final decision.  AR at 6-11.  On September 23, 2022, Plaintiff commenced this action seeking review of the ALJ's decision denying Plaintiff disability benefits.

On February 13, 2023, Plaintiff moved for judgment on the pleadings (Dkt. 8) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 8-1) ("Plaintiff's Memorandum").  On April 10, 2023, Defendant moved for judgment on the pleadings (Dkt. 10) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of Her [*sic*] Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief (Dkt. 10-1) ("Defendant's Memorandum").  Filed on April 30, 2023, was Plaintiff's Reply Brief to Defendant's Motion for Judgement [*sic*] on the Pleadings (Dkt. 11).  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

**FACTS**[4]

Plaintiff Rachel L. ("Plaintiff"), born August 31, 1996, was 22 years old as of her alleged disability onset date ("DOD") of September 5, 2018, and 25 years old as of November 19, 2021, the date of the ALJ's Decision.  AR at 18, 240, 270.  Plaintiff lived with her husband and two children, a son born in 2018, and a daughter born in 2021, in an apartment.  AR at 37-38, 241, 275, 599, 908.  Plaintiff completed high school where she attended special education classes, but has not completed any type of specialized job training, trade, or vocational school.  AR at 261.  Plaintiff does not drive and does not have a driver's license, and either walks or obtains rides from others.  AR at 276.  Plaintiff does not need any help with self-care or grooming, and spends her days taking care of her two children, including a toddler (Plaintiff's daughter was not yet born), cleaning, preparing simple meals, going for walks, and shopping several times a month for groceries and household needs.  AR at 275-78.  Plaintiff's hobbies include watching television, socializing with others, and having play dates with her son.  Plaintiff's past work includes brief stints at a fast food restaurant and as a cashier in a store, but Plaintiff has not worked since January 2016.  AR at 286-89.

Plaintiff receives treatment for chronic fatigue, muscle and back pain related to fibromyalgia, orthostatic hypotension (condition in which there is a significant drop in blood pressure upon standing or sitting from a lying position), and chronic depression from various health care providers.  On October 23, 2018, Plaintiff was evaluated by Frederick McAdam, M.D. ("Dr. McAdam") at Buffalo Spine and Sports Medicine.  AR at 365-70.  On November 12, 2019, Plaintiff established care at Buffalo Rheumatology and

---

[4] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

4

Medicine ("Buffalo Rheumatology"), where she saw rheumatologist Alicia Lieberman, M.D. ("Dr. Lieberman"), who diagnosed Plaintiff with fibromyalgia. AR at 384-98, 559-77, 1183-90. Plaintiff obtains mental health treatment at Best Self Behavioral Healthcare where she sees Licensed Master Social Worker ("LMSW") Melissa Cronyn ("LMSW Cronyn") as a therapist, and Nurse Practitioner ("NP") Paula Leszak ("NP Leszak"), for medication management. AR at 399-500, 865-1178. Plaintiff sees primary care physician ("PCP") Dana Anderson, M.D. ("Dr. Anderson") at Tri-County Family Medicine ("Tri-County"), in Gowanda, New York. AR at 501-06, 578-564.

In connection with her disability benefits application, on June 19, 2020, Plaintiff underwent a psychiatric evaluation by consultative psychologist Christine Ransom, Ph.D. ("Dr. Ransom"). AR at 519-22. Upon examination, Plaintiff's mental status was essentially normal and unremarkable, and Dr. Ransom diagnosed Plaintiff with "unspecified anxiety disorder, currently very mild and episodic." AR at 520-22. On that same date, Plaintiff underwent an internal medicine examination by consultative physician John Schwab, D.O. ("Dr. Schwab"). AR at 524-27. Dr. Schwab's examination of Plaintiff was unremarkable except that Plaintiff could squat only to 50% of full, and Plaintiff had 16 so-called "trigger points."[5] AR at 525-26. Dr. Schwab diagnosed Plaintiff with fibromyalgia, orthostatic hypotension, and history of essential tremor,[6]

---

[5] "Trigger points" or "tender points" refer to specific area of sensitivity from which pain radiates when pressed and are considered symptomatic of fibromyalgia. There are 18 trigger points associated with fibromyalgia occurring in nine symmetrical pairs from the back of the head to the inner knees. *See* Tender points, *available at*: https://www.mayoclinic.org/tender-points/img-20007586, *last visited* September 8, 2025.

[6] Plaintiff's essential tremor manifested in episodes of shaking hands and was considered a genetic condition. AR at 48, 714.

assessed Plaintiff's prognosis as stable, and provided a medical source statement that Plaintiff "should avoid abruptly rising from a prone or supine position." AR at 526-27.

Plaintiff's medical records were reviewed by State agency medical consultants T. Schmidt-DeYoung, M.D. ("Dr. Schmidt-DeYoung"), on June 29, 2020 in connection with the SSA's initial review of Plaintiff's disability benefits application, AR at 93-105, and by S. Padmaraju, M.D. ("Dr. Padmaraju") on December 14, 2020, upon reconsideration of the initial denial of the application ("Dr. Padmaraju's Opinion"). AR at 106-24. Based on their separate reviews of the medical evidence, both Drs. Schmidt-DeYoung and Padmaraju found Plaintiff's severe impairments included spine disorders, fibromyalgia, and migraines, but Plaintiff's anxiety and obsessive-compulsive disorder was not severe. *Id*. at 99-100, 115-16. Both Drs. Schmidt-DeYoung and Padmaraju also concurred that Plaintiff, despite her impairments, retained the RFC for light work with some additional limitations including occasional postural limitations. AR at 102, 120.

On September 1, 2021, Dr. Lieberman completed a Fibromyalgia, Arthritis and Immunological Disorders Residual Functional Capacity Questionnaire ("Dr. Lieberman's Opinion"), on which Plaintiff's diagnosis is reported as fibromyalgia based on multiple trigger points, chronic severe fatigue, frequent and severe headaches, vestibular dysfunction (disturbance in body's balance system), and anxiety. AR at 1185-90. According to Dr. Lieberman, Plaintiff's pain and other symptoms would frequently interfere with Plaintiff's attention and concentration, yet Plaintiff remained capable of low stress jobs. *Id*. at 1186. Dr. Lieberman declined to assess Plaintiff's functional limitations if placed in a competitive work situation, *id*. at 1187-88, and reported Plaintiff's condition would likely produce "good days" and "bad days" and cause Plaintiff

6

to miss more than four days of work per month.  *Id*. at 1189.  Dr. Lieberman assessed Plaintiff with marked limitations in her activities of daily living, and in completing tasks in a timely manner because of concentration deficiencies, and mild limitations to social functioning.  *Id*. at 1190.

On June 11, 2020, at the referral of Dr. Lieberman, Plaintiff commenced physical therapy at Catholic Health Partners in Rehab ("Catholic Health"), for complaints of cervicalgia (neck pain) and thoracic pain.  AR at 535-52.  Although upon initial evaluation, Plaintiff complained of intermittent pain in her lower arms, and presented with decreased range of motion in the cervical spine, she had full strength in her upper extremities but decreased sensation to light touch in the left forearm, with hypermobility (excessive range of motion) noted in her lumbar-sacral spine.  AR at 539.  Plaintiff's symptoms improved, AR at 544, and she was discharged from physical therapy on October 5, 2020.  AR at 552.  At an annual physical on January 21, 2021 with Dr. Anderson, Plaintiff's PCP, Plaintiff reported her fibromyalgia was doing well with her rheumatologist and that she would return to physical therapy if needed.  AR at 623-24.

Prior to filing her disability benefits application, Plaintiff underwent multiple diagnostic tests in attempting to determine the cause of her fibromyalgia, but the results were largely within normal limits.  *See* AR at 375-83 (MRI of cervical spine on October 3, 2018 was unremarkable and unchanged since 2014 and 2016); AR at 851 (June 4, 2019, X-rays of thoracic spine showed mild scoliotic curvature); AR at 383 (November 12, 2019 X-rays of sacral joints and bilateral knees showed no prominent degenerative changes or definite erosive changes, and X-rays of bilateral hands and wrists showed

no degenerative changes or definitive erosive changes); AR at 663 (December 1, 2019 CT of brain shoed no evidence of acute intracranial abnormality).

## DISCUSSION

1.   **Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has

instructed . . . that the factual findings of the Secretary,[7] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.   Disability Determination

The definition of "disabled" is the same for purposes of receiving Disability Insurance Benefits ("DIB") under Title II of the Act as for SSI benefits under Title XVI of the Act. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and

---

[7] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if

the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

In the instant case, the ALJ found that Plaintiff has not engaged in substantial gainful activity ("SGA") since January 30, 2020, the application date.  AR at 20.  The ALJ found Plaintiff suffers from the severe impairments of fibromyalgia, migraine headaches, and orthostatic hypotension, *id*. at 20-21, but that other medically determinable impairments, including gastroesophageal reflux disease, essential tremor, and depression, anxiety, and history of obsessive-compulsive disorder, did not significantly limit Plaintiff's physical or mental ability to do basic work activities and thus are not severe, *id*. at 21-22.  The ALJ further found that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at 22.  Despite her impairments, the ALJ found Plaintiff retains the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with postual positioning limited to no more than occasional crouching, crawling, stooping, kneeling, balancing, and climbing, Plaintiff should avoid exposure to unprotected heights, operating potentially dangerous mechanized equipment, and sudden changes of position from either prone or supine because of potential dizzy spells.  AR at 22-28.  Although Plaintiff has no past relevant work, the ALJ found that Plaintiff, based on her age, high school education, work experience, and RFC, could perform work existing in significant numbers in the national economy including as a router, cashier, and office helper.  *Id*. at 28-29.  Accordingly, the ALJ found Plaintiff was not disabled as defined in the Act since January 30, 2020, when Plaintiff filed her application.  *Id*. at 29.

### 3. Analysis of Plaintiff's Arguments

In support of her motion, Plaintiff argues that remand is warranted because the ALJ failed to consider Dr. Lieberman's Opinion in accordance with the relevant regulations such that the ALJ's Decision, including the RFC formulation's failure to include that Plaintiff, based on her medical impairments, would miss four or more days of work per month, is not supported by substantial evidence in the record.[8]  Plaintiff's Memorandum at 12-19.  Defendant argues the ALJ's Decision properly evaluated Dr. Lieberman's Opinion and substantial evidence in the record, considered as a whole, supports the ALJ's Decision.  Defendant's Memorandum at 6-21.  In reply, Plaintiff argues the ALJ improperly assessed the persuasiveness of the medical opinion evidence and thus erred in formulating Plaintiff's RFC.  Plaintiff's Reply at 1-5.  There is no merit to Plaintiff's arguments.

Plaintiff's argument that the ALJ failed to properly evaluate Dr. Lieberman's Opinion relies on SSA regulations effective as of March 27, 2017, for claims filed after that date, which provide

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate . . . .

20 C.F.R. § 419.920c(a).

---

[8] Because Plaintiff's challenges to the ALJ's Decision are limited to Plaintiff's physical impairments, the court's consideration of the ALJ's decision likewise only considers the impact of Plaintiff's physical impairments on Plaintiff's ability to perform basic work activities and substantial gainful activity.

12

In particular, when more than one medical opinion are provided by medical sources, the Commissioner will consider the medical opinions together according to five factors including (1) supportability; (2) consistency; (3) the medical's source's relationship with the claimant; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(c). When evaluating the persuasiveness of a medical opinion, the two most important factors are supportability and consistency, 20 C.F.R. § 416.920c(a), and the ALJ must articulate he or she considered the "supportability" and "consistency" of a medical source's opinion, 20 C.F.R. § 416.920c(b)(2), but is not required to articulate consideration of the remaining factors. *Id.* Nevertheless, where the ALJ fails to articulate the supportability and consistency factors with regard to opinions found persuasive, such error is harmless if the record establishes application of the correct legal standard would not have changed the outcome of the disability determination. *See Scott A. v. Comm'r of Soc. Sec.*, 2022 WL 3141707, at ** 5-6 (N.D.N.Y. May 3, 2022) (applying harmless error standard where the ALJ failed to articulate the supportability and consistency factors in assessing the persuasiveness of a physician's opinion, but application of the correct legal standard, including the supportability and consistency factors, would not have resulted in a different conclusion). In the instant case, there is no merit to Plaintiff's argument that the ALJ erred in failing to consider the supportability and consistency of Dr. Lieberman's Opinion regardless of whether the ALJ specifically articulated his findings as to supportability and consistency because "the record establishes application of the correct legal standard would not have changed the outcome of the disability determination." *See Scott A.*, 2022 WL 3141707, at ** 5-6.

"Supportability refers to how well 'the objective medical evidence and supporting explanations presented by a medical source . . . support [that source's] medical opinion.'" *Blanford v. Dudek*, 2025 WL 1288082, at *1 (2d Cir. May 5, 2025) (quoting 42 C.F.R. § 416.920c(c)(1)). "Consistency refers to how 'consistent a medical opinion[ ] . . . is with the evidence from other medical sources and nonmedical sources in the claim.'" *Blanford*, 2025 WL 1288082, at *1 (quoting 43 C.F.R. § 416.920c(c)(2)). Here, a thorough review of the Administrative Record establishes the ALJ's evaluation of the medical opinion evidence satisfied the requirements under § 416.920(c) regarding both the supportability and consistency of each medical opinion. *See* AR at 23-28. Plaintiff particularly challenges the ALJ's reliance on the opinion of consultative examiner Dr. Schwab which the ALJ found to be "generally persuasive," AR at 26, rather than the opinion of Plaintiff's treating rheumatologist, Dr. Lieberman, which the ALJ found was "unpersuasive." AR at 27.

The ALJ's noted Dr. Schwab's description of Plaintiff's activities of daily living ("ADLs") included that Plaintiff did not need help at home, cooked daily, cleaned three times a week, did laundry weekly, shopped when needed, cared for her son (Plaintiff's daughter had not yet been born), and enjoyed watching television, listening to the radio, reading, socializing with friends, and going for walks. AR at 25 (citing AR at 524). Plaintiff takes care of her children daily, showered and bathed three to four times a week, and dresses daily, *id*., enjoys watching television, listening to the radio, socializing with friends, and going outside for walks. *Id*. This observation by Dr. Schwab is both supported by objective medical evidence and explanations presented by other medical sources, and consistent with evidence from both other medical and

14

nonmedical sources including essentially tracking Plaintiff's ADLs as Plaintiff stated on her disability benefits application, AR at 279-80, and Dr. Ransom's Opinion based on mental status examination of Plaintiff.  AR at 521 (describing Plaintiff's ADLs consistent with Plaintiff's own description on her disability benefits application).

The ALJ's determination that Dr. Schwab's Opinion was "generally persuasive" was based on Dr. Schwab's physical examination of Plaintiff that was unremarkable except for squat which was limited to 50% of normal, and sixteen trigger points indicative of fibromyalgia.  AR at 25 (referencing AR at 525-26).  Although Dr. Schwab observed that Plaintiff had failed a tilt-table test[9] but was not on any medication for orthostatic hypotension, nonetheless, the positive tilt table test prompted the ALJ to opine Plaintiff should avoid abruptly rising from a prone or supine position.  AR at 26 (referencing AR at 524).  This is consistent with and supported by the record.  *See* AR at 725 (Great Lakes Cardiovascular Tilt Table Interpretation and Impression Report dated Feb. 27, 2019, reporting tilt table test was aborted after 16 minutes when one episode of syncope occurred, and that Plaintiff's blood pressure and consciousness recovered after Plaintiff was returned to a supine position).  *See also* AR at 372 (positive tilt table test on Feb. 27, 2019), 638 (Plaintiff's orthostatic hypotension was controlled with increased intake of water and sodium, as well as discontinued use of Propranolol[10] for control of essential tremors).  The ALJ accounted for these findings by

---

[9] A tilt-table test is a diagnostic test used to evaluate how the body reacts to changes in position including whether a patient's episodes of syncope (fainting) are caused by a drop in blood pressure or heart rate upon rising from a lying or seated position.  *See* Tilt Table Test, available at: https://www.mayoclinic.org/tests-procedures/tilt-table-test/about/pac-20395124, *last visited* Sept. 8, 2025.

[10] Propranolol is a beta-blocker used to treat both essential tremor and high blood pressure.  *See* Treatment of Essential Tremor, *available at*: https://practicalneurology.com/diseases-diagnoses/movement-disorders/treatment-of-essential-tremor/32039/, *last visited*, Sept. 8, 2025.

15

incorporating into Plaintiff's RFC several postural limitations including only occasional crouching, crawling, stooping, kneeling, balancing, and climbing, avoiding exposure to unprotected heights, or operating potentially dangerous mechanized equipment, as well as avoiding sudden changes of positions from either prone or supine because of potential dizzy spells.  AR at 22.

The opinion of State agency review physicians, AR at 93-105 (Dr. Schmidt-DeYoung) and 106-24 (Dr. Padmaraju), who did not examine but reviewed Plaintiff's medical records, are consistent with Dr. Schwab's Opinion, and thus also supported by and consistent with objective medical and opinion evidence in the record.  In particular, both Dr. Schmidt-DeYoung and Padmaraju diagnosed Plaintiff with spine disorders, fibromyalgia, and migraine, but found Plaintiff's anxiety and obsessive-compulsive disorder were not severe, *id*. at 99-100, 115-16, and Padmaraju also concurred that Plaintiff, despite her impairments, retained the RFC for light work with some additional limitations including occasional postural limitations, AR at 102, 120.  Further, "'[a]n ALJ is entitled to rely on the opinions of both examining and non-examining [s]tate agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability.'"  *Tanisha M. v. Comm'r of Soc. Sec.*, 2025 WL 1413091, at *4 (W.D.N.Y. May 15, 2025) (quoting *Bump v. Comm'r of Soc. Sec.,* 2016 WL 6311872, at *4 (N.D.N.Y. Oct. 28, 2016), and citing *see Felicia A. o/b/o O.A. v. Comm'r of Soc. Sec.,* 2024 WL 3696293, at *6 (N.D.N.Y. Aug. 7, 2024) ("As a threshold matter, the opinions of consultative examiners and state agency non-examining consultative physicians can constitute substantial evidence in support of the ALJ's decision."), and *Roane v. O'Malley,* 2024 WL 1357845, at *11 (S.D.N.Y. Mar. 29, 2024)

("[W]hen supported by evidence in the record, the opinion of a nonexamining physician can also constitute substantial evidence.")). *See Stanton v. Astrue*, 370 Fed. Appx. 231, 234 (2d Cir. 2010) (State agency physician's evidence can constitute substantial evidence). Accordingly, the ALJ's reliance on Schmidt-DeYoung's Opinion and Dr. Padmaraju's Opinion as persuasive evidence in formulating Plaintiff's RFC was not in error.

With regard to the ALJ's determination that Dr. Lieberman's Opinion is "unpersuasive," AR at 27, the ALJ explained that despite being Plaintiff's treating rheumatologist, Dr. Lieberman treated Plaintiff only four times between November 2019 and April 2021. The ALJ observed that despite opining Plaintiff would miss more than four days of work per month, and had marked limitations with ADLs and completing tasks in a timely manner, and found Plaintiff with widespread soft tissue and myofascial pain, chronic severe fatigue, frequent headaches, vestibula dysfunction, and anxiety, Dr. Lieberman declined to opine Plaintiff's ability to sit, stand, walk, lift and carry, perform postural maneuvers, reach, handle, or feel. AR at 27. The ALJ found Dr. Lieberman's opinion regarding Plaintiff's asserted disabling symptoms was inconsistent with other evidence in the record, including Plaintiff's ability to care for her young children, perform personal care tasks, cook, clean, and interact with others on a routine basis. *Id*. The ALJ considered Dr. Lieberman's opinion that Plaintiff would miss more than four days of work each month was inconsistent with Dr. Lieberman's opinion that Plaintiff could tolerate a low-stress job. *Id*. Further, the ALJ observed that upon examining Plaintiff on November 19, 2019, January 7, 2020, and April 6, 2021, Dr. Lieberman's findings were limited to some tenderness in Plaintiffs' right wrist, but

17

Plaintiff was able to make a fist and X-rays showed no prominent degenerative changes, AR at 385-86, despite complaints of back and joint pain, Plaintiff had a normal gait, grossly normal range of motion of the lumbar spine, no synovitis (inflammation) of the hips, knees, ankles, and feet, *id*. at 386, and the only recommended treatment was low dose of Flexeril (for muscle spasms) which was delayed at Plaintiff's request pending the birth of Plaintiff's second child, *id*. at 567-68, after which it was recommended Plaintiff resume physical therapy. *Id*. at 568. Accordingly, Dr. Lieberman's treatment notes do not support Dr. Lieberman's Opinion.

The ALJ's determination that Dr. Lieberman's Opinion is "unpersuasive" is also supported by the opinion of Dr. Ransom, the psychological consultant examiner, which the ALJ found "persuasive." AR at 27 (citing AR at 519-22). In particular, Dr. Ransom found Plaintiff without any evidence of limitation in understanding, remembering, and applying simple and complex directions and instructions, using reason and judgment to make work-related decisions, adequately interacting with supervisors, co-workers, and the public, sustaining concentration and performing a task at a consistent pace, sustaining an ordinary routine and regular attendance at work, regulating emotion, controlling behavior, and maintaining well-being, personal hygiene, and appropriate attire, and awareness of hazards and precautions. *Id*. Significantly, Dr. Ransom specifically opined that the psychological evaluation showed "very mild psychiatric symptomatology of a mild episodic nature that does not interfere with her functioning." AR at 521. The ALJ also found Dr. Ransom's Opinion consistent with and supported by treating records showing Plaintiff's mental health symptoms were stable.

The ALJ thus adequately explained how he assessed the persuasiveness of each medical opinion, discussed the consistency and supportability of each opinion, and documented inconsistencies among medical opinions with citations to the record.

Insofar as Plaintiff maintains the ALJ's Decision is not consistent with the record as a whole, but instead "the ALJ relied selectively on evidence to improperly reject [Dr. Lieberman's] opinion" in formulating the RFC, Plaintiff's Memorandum at 14, as discussed above, the ALJ's Decision was supported by substantial evidence in the record, including the opinions of Drs. Schwab, Schmidt-DeYoung, and Padmaraju, which the ALJ found persuasive and which are supported by and consistent with objective medical evidence and other opinion evidence in the record. Moreover, "an ALJ is not required to discuss every piece of evidence submitted," and "failure to cite specific evidence does not indicate that such evidence was not considered." *Brault*, 683 F.3d at 448 (citation and quotation marks omitted).

The evidence in the record thus establishes at most that it is susceptible to more than one rational interpretation, including that Plaintiff did not have a disabling impairment, or combination of impairments, as defined under the Act. *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) ("Under this 'very deferential standard of review [applicable to actions challenging an administrative decision on a disability benefits claim],' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original). Further, the

threshold for substantial evidence "is not high . . . . It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal citation and quotation marks omitted). Indeed, as noted, *see* Discussion, *supra*, at 8, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet*, 523 Fed.Appx. at 59 (quoting *Brault*, 683 F.3d at 448) (italics in original). In the instant case, the ALJ's decision that Plaintiff was not disabled between the date of her disability benefits application and the date of the ALJ's decision is supported by substantial evidence in the record.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 8) is DENIED; Defendant's Motion (Dkt. 10) is GRANTED. The Clerk of Court is DIRECTED to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:	September 9, 2025
	Buffalo, New York